UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON D. SEYMOUR,<br><br>                    Plaintiff,<br><br>          v.<br><br>WASCO STATE PRISON<br>ADMINISTRATION, et al.,<br><br>                    Defendants. | Case No. 1:21-cv-01485-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS,<br>RECOMMENDING THAT THIS ACTION<br>PROCEED ON PLAINTIFF'S EIGHTH<br>AMENDMENT CONDITIONS OF<br>CONFINEMENT CLAIM AGAINST<br>DEFENDANTS DOE 1, DEGOUGH, AND<br>DOE 2, AND THAT ALL OTHER CLAIMS<br>BE DISMISSED<br><br>(ECF No. 13)<br><br>OBJECTIONS, IF ANY, DUE WITHIN<br>TWENTY-ONE (21) DAYS |

Aaron D. Seymour ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action.  Plaintiff filed the complaint commencing this action on September 24, 2021.  (ECF No. 1).  On October 19, 2021, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims.  (ECF No. 10).  The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; or b. Notify the Court in writing that he wants to stand on his complaint."  (Id. at 9).

On November 8, 2021, Plaintiff filed his First Amended Complaint.  (ECF No. 13).  Plaintiff's First Amended Complaint is largely based on the allegations that the water at Wasco

1

1 State Prison is contaminated and that Defendants have not appropriately responded to the issue.

2 The Court has reviewed the First Amended Complaint, and for the reasons described

3 below, will recommend that this action proceed on Plaintiff's Eighth Amendment conditions of

4 confinement claim against defendants Doe 1, Degough, and Doe 2.[1]  The Court will also

5 recommend that all other claims be dismissed.

6 Plaintiff has twenty-one days from the date of service of these findings and

7 recommendations to file his objections.

8 **I.      SCREENING REQUIREMENT**

9 The Court is required to screen complaints brought by prisoners seeking relief against a

10 governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

11 The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

12 legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

13 that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

14 § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 9), the Court may

15 also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any

16 portion thereof, that may have been paid, the court shall dismiss the case at any time if the court

17 determines that the action or appeal fails to state a claim upon which relief may be granted."

18 28 U.S.C. § 1915(e)(2)(B)(ii).

19 A complaint is required to contain "a short and plain statement of the claim showing

20 that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are

21 not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

22 conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

23 Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient

24 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id.

25 _____

26 [1] Plaintiff is advised that defendants Doe 1 and Doe 2 cannot be served until Plaintiff has identified them and filed a motion to substitute, or amended his complaint to substitute, the named defendants in place of the Doe

27 defendants.  For service to be successful, the Court and/or the United States Marshal must be able to identify and locate the defendants to be served.  Plaintiff will be required to identify defendant Doe 1 and defendant Doe 2 as

28 the litigation proceeds.  The Court notes that, once discovery opens, Plaintiff will be given the opportunity to seek information to identify the Doe defendants.

(quoting <u>Twombly</u>, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  <u>Id.</u> at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  <u>Iqbal</u>, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after <u>Iqbal</u>).

## II.      SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

At times, Plaintiff's complaint is difficult to understand.  What follows is the Court's best understanding of Plaintiff's factual allegations and the claims he is bringing.

Plaintiff brings six claims.

### A.  Plaintiff's First Claim

Plaintiff's first claim is an Eighth Amendment cruel and unusual punishment claim. Plaintiff alleges that since December 14, 2017, Wasco State Prison has been failing the California Domestic Water Quality & Monitoring Regulations and thus violating federal anti-pollution laws with MCL 1, 2, 3-TCP (Trichloropropane), a chemical toxic carcinogenic byproduct of a varnish remover for combustion engines.  Trichloropropane causes severe harm to humans, including cancer, resulting in death.  The levels of Trichloropropane are above the legal limit.

Defendant Kathleen Alison is the Secretary of the California Department of Corrections and Rehabilitation ("CDCR").  Her job is to be the correspondent between inmates and all CDCR staff and administrators concerning inmates' needs and risks to their health and safety. It is also her job to scrutinize all records and regulations about health, safety, and risk.

By failing to correctly and competently "correspond" the true risk and lethal danger of Plaintiff being exposed to unsanitary, contaminated, toxic drinking water and being forced to drink a diseased water source, she set in motion dangerous reactions resulting in her being responsible for inflicting cruel and unusual punishment.

Wasco State Prison has attempted and failed to implement a process that is effective and timely in removing the carcinogenic contaminants from Plaintiff's drinking water.  In fact, because of defendant Alison's lack of conscience and negligence, the infectious disease has worsened in Plaintiff's drinking water.  Her lack of action has exacerbated the problem.  The legal limit set by federal regulations for Trichloropropane is equivalent to 0.005 ug/L, yet over the course of four years it has grown from 0.008 ug/L, to 0.019 ug/L, to 0.022 ug/L, and the number continues to rise.

There is an endemic outbreak on the rise, and this is the water Plaintiff drinks, bathes with, and eats with.  Heating the water to cook with incubates the bacteria that could cause other outbreaks like Legionnaires' disease.

Defendant Jeff MaComber, the Undersecretary of Operations at the CDCR, stood by and allowed his superior to advance this unconscionable movement by remaining quiet and not exploring alternatives to help defendant Alison uphold her duty to keep the inmates of Wasco State Prison safe.

All these negligent adverse actions set in motion the example for their subordinates to follow and similarly do nothing, thus continuing to let the unsanitary diseased water make it to Plaintiff's drinking spout.

Defendant Doe 1 (the Warden at Wasco State Prison from December 14, 2017 through the present) misallocated federal funds from the Wasco State Prison treasury for his and his colleagues' personal use, which depleted financial resources in place to combat and correctly treat the infectious water and remove the GAC system that has only exacerbated the problem. Defendant Doe 1 chose to withhold money that clearly would have been better suited going to the inmate store canteen for the purchasing of clean drinking water for the inmates to buy, which would have extremely reduced Plaintiff's exposure to the carcinogenic chemical in his water.

Scott Degough, the Wasco State Prison Water System Contractor, relayed false information to Wasco State Prison staff about the true risk and high exposure of Trichloropropane, showing blatant disregard for Plaintiff's life, safety, and health.  If defendant

4

Degough would have monitored the increase of this toxin and informed the administration correctly, Plaintiff would not be infected today.

Defendant Doe 2, the head of the Health and Safety Division of Wasco State Prison, has a sworn duty to always second guess, investigate, and go above and beyond to make sure that the water is not toxic or a threat to inmates' health.  However, he or she did not do so.

The water has caused Plaintiff severe kidney pain that has him bedridden.  Sometimes he is paralyzed, nauseated, and numb in his limbs.  He is suffering from extreme hair loss, eye irritation, headaches, rashes, and extreme emotional distress.

The water Plaintiff must drink is poisonous.  All the staff above are privy of the danger yet have done little to nothing to stop Plaintiff's exposure to the infectious disease.  As a result, for four years the problem continues to worsen.

**B.  Plaintiff's Second Claim**

Plaintiff's second claim is for violation of his right to health and safety.  Plaintiff alleges that defendant Alison, defendant Doe 1, and Defendant Doe 2, from their actions above and throughout the complaint, have endangered Plaintiff's life.  Plaintiff has been and continues to suffer physically and mentally due to being forced to drink toxic water, as there is no other option but this infested diseased water.  Defendant Doe 1 works in Kern County and has firsthand knowledge of the severe risk of Kern County's water, as numerous cities (including Arvin and Delano) have suffered the same exposure to the health risk in their community.  Additionally, the news, newspaper, and media have televised the rampant harm, and citizens have been banned from consuming this water.  Defendant Doe 2 is being reactive instead of proactive and awaiting the harm done by said water, using Plaintiff as a lab-rat instead of issuing an emergency and dispensing clean drinking water.

Defendant Alison personally refuses to raise the issue with Health and Safety.  A call from her could save Plaintiff.

**C.  Plaintiff's Third Claim**

Plaintiff's third claim is for violation of his right to safety and security as a CDCR inmate.  Plaintiff alleges that a three-year marker was set from December 14, 2017, through

5

December 14, 2020, to have remedied the infectious water problem.  However, nothing has been done.  One year after the set date, the chemical contaminate continues to circulate to Plaintiff and all other inmates.  Defendant Alison once again failed to circumvent this egregious risk to human life.  Plaintiff is not safe from this infectious disease because defendant Alison did not effectively intervene and immediately halt her superior's failed conversations to stop this contamination.  She continued to allow an outdated memo of misinformation and provided no updates as to any progress (because there was none) to her constituents of the real risk to Plaintiff.

Defendant Alison should have researched better and hired a new contractor and ordered a bipartisan test team for examination of the toxic drinking water.  She also should have correctly corresponded to the Health and Safety Director of Adult Institutions.  Plaintiff would not continue to suffer.  An email would have saved his health and life.

Jeff MaComber has shown incompetence beyond that of one in his position, silence is violence, and he should have trained his subordinates correctly on the proper safety protocol to identify, classify, and remove the deadly chemical contaminants pursuant to Occupational Safety and Health Administration ("OSHA") standards (which Plaintiff is privy of).  Had he done so, this problem would not exist and Plaintiff's health would be 100% and not in the 40th percentile.

There are rules and standards set by OSHA that no staff has followed.  Because of this negligent oversight Plaintiff is still suffering extreme pain.

If defendants Alison, McComber, Doe 1, Degough, and Doe 2 would have abided by OSHA, the federal anti-pollution law, and CDCR's own rules to maintain health and safety, this triple threat of Valley Fever, COVID-19, and the cancer epidemic would not exist.

### D.  Plaintiff's Fourth Claim

Plaintiff's fourth claim is for a violation of his right to due process.  Plaintiff alleges that defendant Alison failed to create and implement an effective policy and protocol to remove the deadly carcinogens out of his drinking water.  She took no proper steps that would have led to easing Plaintiff's apprehension or remedying this toxic problem.  She failed to train all staff

6

involved in the process to discuss, establish, and research the harm and initiate in a timely manner a plan that will take proper steps to fix the issue or reduce the risk.  And, the chemical contamination problem worsened tremendously.

A three-year timeline was set to have this situation contained, yet going on two years after the marker date it still exists.  The GAC system was a band-aid, a joke to Plaintiff's health.  Defendant Doe 1 neglected to do a follow-up investigation on the GAC system for the prison he oversees, clearly to avoid an intentional shut-down of the prison because of the severity of the toxic build-up.  Defendant Doe 1 chose personal gain, to continue his kleptocracy.  He remains running this "Concrete Concentration Camp" with the infectious water being the mustard gas.  Doe 1 allowed the same vague, deadly misleading memo to be printed and only changed the dates.  Defendant Degough typed the memo indicating that continuous consumption of water would indeed cause cancer yet held back other valuable information to a real solution, thus stopping all other staff from being able to take action to this threat so that they could create a lifesaving process, protocol, and policy for Plaintiff to have the God given right to utilize.

Plaintiff reached out to defendant Degough on numerous occasions for more helpful information per his memo, to no avail.  By this direct action, or inaction, defendant Degough stripped away Plaintiff's right to explore his due process in remedying this situation.

### E.  Plaintiff's Fifth Claim

Plaintiff's fifth claim is for violation of his right to equal protection.  Plaintiff alleges that defendant Alison failed to create an intervention program for inmates like the "Early Intervention Program" for her and her staff, since she was overseeing health regulations at Wasco State Prison.  The Early Intervention Program administers counselors and board of insured protection for her and her staff when they are exposed to an infectious disease.  The Early Intervention Program provides compensation and entitlement to benefits when exposed.  Meaning if she or her staff were in Plaintiff's shoes they would be provided monetary compensation, have entitlement benefits, have all medical bills covered, have all medication covered, and have all mental health treatment covered.

7

Plaintiff seeks the same equal protection for his exposure to the infectious disease from drinking the unsanitary water supply, caused by the staff of CDCR and all the named defendants.

Defendant Doe 1 allows his staff to purchase and drink sanitary bottled water while denying Plaintiff that same right by restricting the bottled water for inmates to purchase at the canteen. Defendant MaComber offers no suggestions or options to stay safe like the outside community, which has a set remedy to avoid consuming Kern County's contaminated and carcinogenic water, implemented by societies' true leaders.

## F. Plaintiff's Sixth Claim

Plaintiff's sixth claim is for violation of his right to medical care and treatment.

Plaintiff alleges that the deadly memo of failed water regulations informed Plaintiff to consult his doctor to raise concerns about the water and the exposure to the infectious disease. However, defendant Doe 2 has no idea that his or her office was referenced to for any such reason. This is odd because it is clear as day on the memo that Plaintiff possesses. As a matter of fact, multiple times Plaintiff went to the clinic, the staff was dumbfounded and blown aback by his inquiry when he demanded to start the procedural steps to get tested for cancer and the B.R.C.A. 1 & 2 cancer genetic test. Plaintiff was denied. Plaintiff was told that there was no test he can take for cancer except for a colon cancer test. So, Plaintiff asked for that test and the nurse said no. Plaintiff informed her of his high risk, that two of his grandparents died from colon and prostate cancer, that one grandmother died from breast cancer, and that his dad is a high risk for cancer himself. Still, he was denied any assistance. Then the next day an inmate named George received a test for cancer. Plaintiff was lied to and denied. Defendant Doe 2 set an extremely effective protocol to combat against COVID-19, so he understands how to be proactive against a threat yet he neglected his duty to create a policy to protect Plaintiff from the unsanitary water. It appears that the Office of Health and Safety denied Plaintiff medical attention to avoid embarrassment and save face.

## G. Plaintiff's Declaration

At the end of his complaint, Plaintiff attached a declaration. According to Plaintiff's

8

declaration, due to drinking the contaminated water, his risk of contracting cancer is through the roof.  Plaintiff has a family history of cancer, and three of his four grandparents have died from cancer already.  Most recently, his father was rushed to the emergency room because of an identified grape-sized nodule in his rectum, which doctors believe to be cancerous.  Plaintiff has already experienced horrible pain and physical debilitations from the infectious water.  Plaintiff has experienced stomach cramps and severe kidney pain that leaves him at times paralyzed in his bed and causes him to miss work.  He has hair loss so noticeable that he stays hidden in the dark of his cell to avoid jokes and ridicule from other inmates.  The water has given him nausea and respiratory issues.  At times his breaths are wheezy.

These problems have caused Plaintiff extreme emotional distress and at times he is unable to eat.  He does so only to retain nourishment because of his sore throat caused by the toxic water.

Plaintiff has been tested for COVID-19 within the past month, and he tested negative every time.

Plaintiff's weight has fallen dramatically, from 205 pounds to 180 pounds in four months.  His psychologist was shocked by this weight loss.  She looked up Trichloropropane and informed Plaintiff of the high risk it poses to his health.

Defendant Alison has other memos around talking about notices of healthcare regulations but none on the issue of the contaminated water.

### III.    ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor,

9

1   490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see
2   also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los
3   Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir.
4   2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

5          To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted
6   under color of state law, and (2) the defendant deprived him of rights secured by the
7   Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir.
8   2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing
9   "under color of state law").  A person deprives another of a constitutional right, "within the
10  meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or
11  omits to perform an act which he is legally required to do that causes the deprivation of which
12  complaint is made.'"  Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183
13  (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite
14  causal connection may be established when an official sets in motion a 'series of acts by others
15  which the actor knows or reasonably should know would cause others to inflict' constitutional
16  harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of
17  causation "closely resembles the standard 'foreseeability' formulation of proximate cause."
18  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City
19  of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

20         A plaintiff must demonstrate that each named defendant personally participated in the
21  deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual
22  connection or link between the actions of the defendants and the deprivation alleged to have
23  been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S.
24  658, 691, 695 (1978).

25         Supervisory personnel are not liable under section 1983 for the actions of their
26  employees under a theory of *respondeat superior* and, therefore, when a named defendant
27  holds a supervisory position, the causal link between the supervisory defendant and the claimed
28  constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v.

10

*Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

## B.  Conditions of Confinement

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also* *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Conditions of confinement may, consistent with the Constitution, be restrictive and harsh.  *See* *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*).  Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by* *Sandin v. Connor*, 515 U.S. 472 (1995); *see also* *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation.  *Farmer*, 511

11

1    U.S. at 834.  "First, the deprivation alleged must be, objectively, sufficiently serious."  Id.

2    (citation and internal quotation marks omitted).  Second, "a prison official must have a

3    sufficiently culpable state of mind," which for conditions of confinement claims "is one of

4    deliberate indifference."  Id. (citations and internal quotation marks omitted).  Prison officials

5    act with deliberate indifference when they know of and disregard an excessive risk to inmate

6    health or safety.  Id. at 837.  The circumstances, nature, and duration of the deprivations are

7    critical in determining whether the conditions complained of are grave enough to form the basis

8    of a viable Eighth Amendment claim.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006).

9    Mere negligence on the part of a prison official is not sufficient to establish liability, but rather,

10   the official's conduct must have been wanton.  Farmer, 511 U.S. at 835; Frost v. Agnos, 152

11   F.3d 1124, 1128 (9th Cir. 1998).

12          While not labeled as such, Plaintiff's first three claims appear to be Eighth Amendment

13   conditions of confinement claims.  In each, Plaintiff alleges that he is being subjected to an

14   excessive risk to his health and safety.

15          Liberally construing Plaintiff's complaint, the Court finds that Plaintiff sufficiently

16   alleges that he is forced to drink, bathe with, and eat with contaminated water, and that this

17   contaminated water poses an excessive risk to his health and safety, to proceed past the

18   screening stage.[2]  According to Plaintiff, he has already suffered numerous symptoms,

19   including severe kidney pain, headaches, hair loss, and rashes.

20          The more difficult question is who Plaintiff alleges is responsible.  Upon reviewing

21   Plaintiff's First Amended Complaint, the Court finds that Plaintiff sufficiently alleges that Doe

22   1 (the Warden of Wasco State Prison),[3] defendant Degough (the Wasco State Prison Water

23   System Contractor), and defendant Doe 2 (the head of the Health and Safety Division of Wasco

24

25          [2] It does not appear that Plaintiff is bringing claims based on exposure to Valley Fever or COVID-19, but
26   to the extent that he is, the Court finds that these claims fail because Plaintiff does not sufficiently allege that any
     defendant acted with deliberate indifference to the threats of Valley Fever or COVID-19.
27          [3] To the extent Plaintiff's claim is based on defendant Doe 1 misallocating federal funds, Plaintiff's claim
     fails because Plaintiff fails to sufficiently allege that defendant Doe 1 misallocated federal funds (Plaintiff provides
28   no allegations regarding the alleged misallocation of funds, such as when it happened or how much was
     misallocated).

State Prison) knew of the contaminated water issue but failed to act.[4]  According to Plaintiff's

First Amended Complaint, all of these defendants appear to be directly responsible for the

health and safety of inmates at Wasco State Prison.  Moreover, it appears that all of these

defendants reside and/or work in Kern County, and Plaintiff alleges that the issue is occurring

throughout Kern County.  Finally, Plaintiff alleges that the news, newspaper, and media have

televised the rampant harm, and citizens have been banned from consuming this water.  Based

on these allegations, and liberally construing Plaintiff's complaint, the Court finds that

Plaintiff's Eighth Amendment conditions of confinement claim against defendants Doe 1,

Degough, and Doe 2 should proceed past screening.

The Court also finds that all of Plaintiff's other conditions of confinement claims

against other defendants should be dismissed.

As to defendant Alison, the Secretary of the CDCR, Plaintiff alleges that it is her job to

be the correspondent between inmates and all CDCR staff and administrators concerning

inmates' needs and risks to their health and safety.  It is also her job to scrutinize all records

and regulations about health, safety, and risk.  Plaintiff further alleges that she did not correctly

and competently respond to the issue.  Finally, Plaintiff alleges that she failed to train staff

involved in the process.

Plaintiff's allegations concern defendant Alison's alleged failure to act.  However, there

are no non-conclusory factual allegations suggesting that she knew about the contaminated

water yet disregarded the risk it posed.  As Plaintiff did not sufficiently allege that she knew

that the water was contaminated, the allegations that she failed to act to correct the issue are

insufficient to state a claim.  The Court notes that even if defendant Alison should have known

about the issue, as discussed above, negligence alone is not enough.

As to Plaintiff's allegations regarding a failure to train her subordinates, these

allegations are conclusory.  Plaintiff fails to sufficiently allege facts indicating that the

---

[4] Based on Plaintiff's allegations, it appears that at least some of the defendants did act, at least initially. Plaintiff alleges that there was a three-year plan to deal with the issue.  However, Plaintiff alleges the three-year period expired in December of 2020 and the issue continues to get worse.

1  Secretary of the CDCR was personally responsible for training staff regarding the relevant

2  issues, or that the training that she allegedly failed to provide would have helped resolve the

3  contamination issue.

4         As to defendant MaComber, the Undersecretary of Operations at the CDCR, Plaintiff

5  alleges that he stood by and allowed his superior to advance this unconscionable movement by

6  remaining quiet and not exploring alternatives to helping defendant Alison uphold her duty to

7  keep the inmates of Wasco State Prison safe.  Plaintiff further alleges that he should have

8  trained his subordinates correctly on the proper safety protocol to identify, classify, and remove

9  the deadly chemical contaminants pursuant to Occupational Safety and Health Administration

10  ("OSHA") standards.  Had he done so, this problem would not exist and Plaintiff's health

11  would be 100% and not in the 40th percentile.

12         Plaintiff's allegations regarding defendant MaComber are largely conclusory.  As with

13  defendant Alison, Plaintiff fails to sufficiently allege that defendant MaComber knew about the

14  contaminated water.  Moreover, as with defendant Alison, his allegations regarding defendant

15  MaComber's failure to train his subordinates are conclusory.  Plaintiff fails to sufficiently

16  allege facts indicating that the Undersecretary of Operations at the CDCR was personally

17  responsible for training staff regarding the relevant issues, or that the training that he allegedly

18  failed to provide would have helped resolve the contamination issue.  For example, Plaintiff

19  does not describe the relevant standards or how the issue would have been resolved had staff

20  been properly trained in these standards.

21        **C.  Due Process**

22         The Due Process Clause of the Fourteenth Amendment protects prisoners from being

23  deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S.

24  539, 556 (1974).  The procedural guarantees of the Fifth and Fourteenth Amendments' Due

25  Process Clauses apply only when a constitutionally protected liberty or property interest is at

26  stake.  Ingraham v. Wright, 430 U.S. 651, 672-73 (1977).

27         Plaintiff's fourth claim is for violation of his right to due process.  It is not clear what

28  due process claim Plaintiff is bringing.  Plaintiff appears to complain about a lack of access to

accurate information regarding the contaminated water, as well as the contaminated water itself.  In any event, Plaintiff provides no allegations regarding a process that Plaintiff believes he was entitled to before being denied a liberty or property interest.  Accordingly, Plaintiff's due process claims fail.

As to Plaintiff's allegations regarding the contaminated water not being appropriately addressed, as Plaintiff is complaining about unsafe conditions of confinement, these allegations are more appropriately brought as an Eighth Amendment conditions of confinement claim. And, as discussed above, Plaintiff sufficiently alleges an Eighth Amendment conditions of confinement claim against certain defendants.

### D.  Equal Protection

The equal protection clause requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class, Hartmann, 707 F.3d at 1123 Furnace, 705 F.3d at 1030, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02 (2008), Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008), North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff's fifth claim is for violation of his right to equal protection.

Inmates are not a protected class.  Webber v. Crabtree, 158 F.3d 460, 461 (9th Cir. 1998); Veenstra v. Idaho State Bd. of Correction, 785 F. App'x 390, 391 (9th Cir. 2019). Moreover, Plaintiff fails to sufficiently allege that inmates and correctional staff, or inmates and the outside community, are similarly situated.  And, even if he had, Plaintiff fails to

1  sufficiently allege that inmates were treated differently without a rational relationship to a

2  legitimate state purpose.  Accordingly, Plaintiff's equal protection claims fail.

3  ### E.  Deliberate Indifference to Serious Medical Needs

4     "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an

5  inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d

6  1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires

7  Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a

8  prisoner's condition could result in further significant injury or the unnecessary and wanton

9  infliction of pain,'" and (2) that "the defendant's response to the need was deliberately

10  indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992))

11  (citation and internal quotations marks omitted), overruled on other grounds by WMX

12  Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

13     Deliberate indifference is established only where the defendant *subjectively* "knows of

14  and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d

15  1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

16  Deliberate indifference can be established "by showing (a) a purposeful act or failure to

17  respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

18  Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an

19  unjustifiably high risk of harm that is either known or so obvious that it should be known") is

20  insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825,

21  836-37 & n.5 (1994) (citations omitted).

22     A difference of opinion between an inmate and prison medical personnel—or between

23  medical professionals—regarding appropriate medical diagnosis and treatment is not enough to

24  establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);

25  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a

26  physician has been negligent in diagnosing or treating a medical condition does not state a valid

27  claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not

28  become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at

106.  To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances."  <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff's sixth claim is for violation of his right to medical care and treatment. Plaintiff only brings this claim against defendant Doe 2.  Plaintiff complains that he was not given a cancer screening, despite asking for it repeatedly and telling a nurse about the history of cancer in his family.

Plaintiff's sixth claim fails.  There are no factual allegations suggesting that defendant Doe 2 knew that Plaintiff had a serious medical need yet disregarded that need.  Moreover, there are no allegations suggesting that defendant Doe 2 was in any way responsible for Plaintiff being denied a cancer screening.  Plaintiff does allege that defendant Doe 2 has no idea that his office was referenced in a memo telling inmates to raise their concerns about the contaminated water with their doctor, but this does not sufficiently show that defendant Doe 2 acted with deliberate indifference towards inmates' serious medical needs.[5]  Thus, Plaintiff's claim against defendant Doe 2 for deliberate indifference to his serious medical needs fails.

As to Plaintiff's allegations regarding the contaminated water not being appropriately addressed by defendant Doe 2, as Plaintiff is complaining about unsafe conditions of confinement, these allegations are more appropriately brought as an Eighth Amendment conditions of confinement claim.  And, as discussed above, Plaintiff sufficiently alleges an Eighth Amendment conditions of confinement claim against defendant Doe 2.

## IV.     CONCLUSION AND RECOMMENDATIONS

The Court has screened the First Amended Complaint and finds that Plaintiff's Eighth Amendment conditions of confinement claim against defendants Doe 1, Degough, and Doe 2 should proceed past screening.  The Court also finds that all other claims should be dismissed.

The Court will not recommend that further leave to amend be granted.  In the Court's

---

[5] Although the nurse is not named as a defendant, the Court notes that while Plaintiff allegedly told the nurse about the history of cancer in his family, he does not allege that he told the nurse about the allegedly contaminated water or the numerous symptoms he was allegedly experiencing.

prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint.  Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order.  While Plaintiff cured some of the deficiencies identified by the Court in the Court's prior screening order, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1.  This case proceed on Plaintiff's Eighth Amendment conditions of confinement claim against defendants Doe 1, Degough, and Doe 2; and

2.  All other claims be dismissed.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __December 27, 2021__                    /s/ Erica P. Grosjean
                                                  UNITED STATES MAGISTRATE JUDGE